You may proceed when you're ready. I'm ready, Your Honor. David Shack for the appellant, USA Equestrian Trust. So, I want to jump in and get to what I think is the key issue. I'm sure the court agrees. It's the contractual language in the Old Republic policy that states, all claims arising out of the same wrongful act and all related wrongful, interrelated wrongful acts shall be deemed one claim. And, you know, as we look at this, I can tell you there are a couple things that the appellant and the district court actually agree on before we get to the things that we definitely disagree on. And one of them is that this language is very broad. It's broad in the sense that the defined terms wrongful act and interrelated wrongful act are expanded greatly. They're not necessarily the same meaning that you or I would give or the dictionary would give. Old Republic, who drafted this policy, chose to give them defined terms and defined them very broadly. And the district court agreed to that. And the district court also agreed that this language, all claims arising out of, the arising out of term, under California law, is defined very broadly. Okay. Counselor, can you tell me what the wrongful act is? The wrongful acts, and we list many of them, because a wrongful act is an act that includes an act, omission, a breach of duty, and so forth. If you look at the, and this is where we departed from the district court. Okay. So what is the wrongful act in this case? The wrongful act in this case includes breaches of duty. Okay. That's not helpful. I'm asking very specifically what is it that USA Equestrian Trust did that was wrongful? I'll start. And you can give me an act, you can give me an omission or a breach of duty, but I want to know what Equestrian Trust did. What is their wrongful act? The trust had a duty to enact reasonable policies, procedures, safeguards to address and avoid sexual assault by trainers, instructors, and other adults and other persons in authority, alleged in all five cases. The trust gave access to the police. They failed to adopt policies. That is one of them. They failed to enact policies and procedures to address sexual assault of  But the fifth case involves a different instructor, correct? The fifth case involves a different trainer, but the acts, all the acts that lead up to that trainer allegedly being capable. You know, multiple acts of, you know, say bad negligent hiring or negligent supervision of employees in different settings is all one wrongful act? Your Honor, I think it's a little different than that. And this is the series of allegations that we list in our brief, and that I will submit to you that the district court never really grappled with and, excuse me, the appellee never grapples with. The trust, according to the allegations, ran these shows, made them the only shows where minor riders could ride and get access to international and Olympic qualifying events. In other words, entice them. They had to be in these events. They made them sign in. They had the power. They made the participants abide by the rules. They had the power to create rules that would have prevented this interaction between the trainers and the minors. They did. They should have stopped trainers from dealing with minors? No, they should have enacted rules that, for example, that said no trainer can be alone with a minor or other protocols that would have kept minors, as many organizations do, and as we found out over the years, many organizations failed to do, to keep adult trainers who could be predators away from minors. And the allegations are the same in every case because the problem was allegedly, and I say allegedly, the same in every case. They enticed the minor riders to these events. They had the ability and the power to adopt rules. They knew that these minor riders were subjected to adult trainers. They even knew that each of the trainers involved in here was a predator. That's the allegation. They knew that many trainers and these trainers were predators. They knew bad acts were going on. They did nothing. I mean, there's a whole laundry list. Let me ask you, to the extent that you have four actions that were filed within the policy period, would there be any temporal limits to the extent that you assert that there's a relationship between this action from a year, five years, 10 years, 20 years after that relates to this claim that was made within the policy period? Are there any temporal limits? I think that, you know, you'd have to believe there's some, there is a temporal limit of some type. A hundred years later, could you possibly have the same? But here, no, no. Well, Bay Cities talks about this idea of attenuation, correct? And so that's the question before the court is whether or not this fifth claim is so attenuated that it really can't be said to be relate to the first four claims. What's your response to that? But my response to that is temporally. The fifth claim was not filed that long after the policy period, but outside the policy, but outside the policy. Isn't your theory similar to the one that was rejected in the homestead insurance case where it's a fraudulent scheme and the later victims want to tail into the suit that was timely and say it's all one, you know, all one wrongdoing and the court rejects that. So how do you distinguish the homestead case? First, I don't think the homestead case dealt with the same policy language. And this is a contract case. And we have to construe the language of this contract. Cases that talk generally about related or similar words don't really have weight. The district court actually recognized that. How do you think the language here differs in a relevant way from homestead that would produce a different result? Because here you define wrongful act to include act, omission, breach of duty, circumstance, situation. It's as broad as it could possibly be. Once you go every act or omission, it's everything. And interrelated wrongful acts even expands that further. And the definition of related claim expands it further because it says arises from those things. I would suggest to the court look at the WFS case decided by the Ninth Circuit. In that case, what happened is the WFS, which was a lender, got sued by many people. Excuse me. WFS sued its insurer, Progressive, after WFS had been sued by borrowers who said WFS has failed to adopt policies that prevented the auto dealers through whom the loans were issued from engaging in lending practices that discriminated against minorities. There were two lawsuits filed. Year one, a class action in state court. Year two, a class action in federal court. Progressive says, now this is the insurer, and arguing the other side of the argument. The language is almost identical. Progressive says, well, wait a second. These are related. We want to push the class action in year two back into policy one. We don't want to have two policy limits implicated. So all of a sudden the argument is this is the broadest language it could possibly be. Everything goes back into year one. And you know what? The Ninth Circuit agreed. Agreed that this language is very broad and that year two, class action, should be brought back into policy one, save the insurer a lot of money, because they didn't have to pay for it, and construed it very broadly. As a matter of fact, the Ninth Circuit said, in one of the quotes in the policy, I mean, here we're talking about this for purpose, I guess, of the duty to defend. Would it be a consequence of your argument that there would be, that it all be subject to one coverage limit? It is subject to one coverage limit, Your Honor. The trust is subject to that one coverage limit in the policy which it is trying to bring. Because it would only be the one policy. Correct. So in the WFS case, there was actually some affirmative actions being taken by the car dealers in terms of discriminating against individuals. Here you're not asserting that there's any affirmative actions being taken necessarily versus, you're arguing that there's omissions, failures to adopt certain policies to protect. Correct? Yes, but I think it's a distinction and not a difference for a couple of reasons which I can address. First of all, the policy defines wrongful act as acts or omissions. It would not square with the language of the policy to say only omissions can be related acts. Second, I think it's how you look at it because remember in, and this is one of the points I wanted to make, in WFS, the perpetrators were the independent auto dealers who were independent auto dealers. They were failing, they were using subjective criteria to discriminate. That was the allegation. It's really just the way you look at it. The allegation is WFS did not implement sufficient policies to control each independent auto dealer, many separate perpetrators, to prevent the discrimination. The Court of Appeal said that although the suits were filed by two different sets of plaintiffs in two different fora under different legal theories, the common basis for those suits was the WFS business practice of permitting independent dealers to mark up WFS loans. I think that's this case. I think that's the closest case you're going to get to this case. But I think with affirmative acts, you're able to better line up the facts from one case to the next case to the next case. In the case of omission, a failure to do something, it just seems that it's so, if not broad, that it lends itself to a theory of attenuation. Well, I would say this, Your Honor. First, if you look at the alleged omissions, the alleged failure to adopt policies, it's really uniform. I mean, this was a national equestrian organization that had shows where minor riders were trained, and these minor riders came forth years later and said in each case, look, the organization did not enact sufficient protections for these minor riders when they knew they were being abused. I mean, the rules would be pretty uniform if they'd ever been adopted, allegedly. The second thing I would say is this language is very broad. Acts or omissions or breaches of duty. Old Republic wrote this case, wrote this policy. Sometimes they get the benefit of it, like when they want to drag a claim back into a prior year, like the WFS case, although that wasn't Old Republic. Sometimes they get the benefit of it. Sometimes it works to their detriment. In this case, it would work to their detriment, but they can't have it both ways. If they wanted narrower language, if they wanted to say related claims only apply to affirmative acts, write that policy. The trust had no ability to write it. The trust was relying on the fact that when they get sued for these claims and then the policy ends, and you have to remember, and this is beyond the record, you're never going to get insurance for these types of claims again after they start. They're relying on this related claim language to protect them, to bring them back into this policy. They're never going to get another policy. And yet here comes the insurer. When it helps them, yeah, it's the broadest language known to man. When it doesn't, oh, no, no, no, it's not that broad. And that to me is sort of the – when I read the cases and I look at this, that's the perversity of the situation. It's not – I know the court has a lot of things to consider, but I believe that's a perverse result, that you have these two – this Ninth Circuit case and now another case. And remember in the WFS case, it was summary judgment in favor of the insurer by Judge Phillips in the U.S. District Court for the Central District. It just seems like you can't have it both ways like that. I can – let me raise one other point. I know my time is evaporating. If you look at what Old Republic actually did, so you had two claims against a trainer called Williams, two claims against a trainer called Morris. We call those the prior claims made within the policy period. Then we have what we call the Doe claim or they call the Bearden claim made outside the policy period. I think it's significant that Old Republic said the Morris claims, the two Morris claims were related under this language. The two Williams claims related under this language. But if you look at the chart that we put in our reply brief that compares those claims, compares the two Morris claims to each other and the two Williams claims to each other, everything is different. Everything that they complain about vis-à-vis Doe is the same differences that are in the Morris and Williams claims. Different victims, different locations, different timeframes. Back to this WFS financial case, which I see as an unpublished decision. It is, Your Honor. And it has one sentence distinguishing the Homestead case, which is the case that troubles me. And it says – it just says, Homestead, unlike the present case, involved a dispute between two separate insurers on successive years of risk. That's it. And the distinction – I mean, that sentence, frankly, makes no sense to me because just saying, well, it's two insurers has nothing to do with whether it's related or improperly tailing in the way that Homestead – it's not responsive to Homestead at all. So what do I do with that? Well, again, Your Honor, I think that Homestead involved different language. That was my recollection. It didn't involve – I mean, I know that the Ninth Circuit didn't focus on that in distinguishing Homestead, but I believe Homestead did not involve this very broad interrelated wrongful act and arising from language that you have to have in terms of the – constrain the same contractual language to get to the same ends. That's all I can tell you, Your Honor. Okay. All right. I've taken you over your time, but I'll give you two minutes for rebuttal. Thank you, Your Honor. All right. We will hear now from Mr. Hartley. Good morning. May it please the Court, Michael Hartley on behalf of Old Republic. The district court here got the analysis exactly right in our view. The language in the policy is broad. We don't dispute that, nor do we walk away from it. The application of the language in this case ends up having a different result than it does in other cases, and that's because of the allegations that it's applying to. And what we have here is what has been identified as a wrongful act as failing to allege adequate policies or procedures and whether that's enough to fall within the scope of the policy language that we have. The district court in looking at those issues was, I think, clear, but also very direct in how they address things. And I think that when you look at the adequate policies allegations, those are typically allegations of duty and breach, legal elements, that the defendant had a duty to protect the plaintiff in some way, shape, or form and failed to do so, whether that's by adopting policies or failing to adopt policies or by not acting in a way that protects them. The facts, though, for all of the different complaints that are at issue here are specific to the perpetrator that's involved. So the two Morris cases are all involving the same perpetrator, Morris, who engaged in his misconduct on the East Coast at a different time frame involving different victims. The other cases involved a trainer named Williams who was engaging in his misconduct on the other side of the country, again, at different time frames, at different events and locations involving different witnesses. Exactly the same thing is true for Bearden. They all involved different trainers, different victims, different locations, different time periods. The only I'm going to put it in quotes, but similarity between those three cases in terms of what actually happened with respect to that particular victim, is the naked legal allegation that they had a duty to impose or adopt specific policies and that they failed to do so. The actual wrongful acts being alleged there were specific to each of the three plaintiffs. And because of that, the factual predicate. I think their argument is that the same could be said of WFS, that each auto dealership is behaving badly towards particular people. And so these are discrete acts of wrongdoing. And so therefore, and WFS found them related. So why wouldn't that be true here? What's your response to that? The FWS actually involved allegations of an affirmative practice, an affirmative practice of authorizing the dealers to be able to mark up the particular loan types that are at issue. And so it was authorizing them to allow them to do that. And so there was evidence and allegations that was something more than just a bald allegation in a cause of action saying they had a duty to adopt policies and practices. They were saying that there was a course of conduct that allowed, that was specifically authorizing and, in fact, encouraging dealers to do what they were doing. That's completely absent here. It is just the allegation itself. And the facts are straight up facts about each of the individual plaintiffs or each of the individual victims and each of the individual trainers. And so based on that and the policy language, that isn't requiring an overbroad reading or an overly narrow reading of the policy language. That's just simply applying the policy language to what are potentially somewhat unique facts and coming to a conclusion that. So are the allegations against Morris and Williams that Equestrian Trust failed to supervise them in New York and Southern California? Or is it that the national organization to which Equestrian Trust has now succeeded failed to adopt policies at the national level that would have somehow prevented these incidents? The complaints themselves, I don't think, differentiate it that way. They just say there's adequate policies and procedures. They failed to supervise and address the individual trainers. Because if it's a question of supervision, that feels like that's an on-the-ground and would be specific to facilities in New York and the facilities in Southern California and Northern California. If it's a failure at the national level to adopt policies that say we require two adults to be present any time a child is being trained with a horse so that we can prevent any kind of bad behavior, that feels like that could be common to all three incidents that are alleged here, all three trainers. That would be similar, though, to a scenario, I think, where you could say that probably about every single act that happens in corporate America. If you have a restaurant chain that has a slip and fall at their front door, you can say that the corporate entity at the national level decided that they didn't want it. There is no policy, and so, therefore, there was an affirmative decision not to. Again, and so that feels like an argument on the merits, not an excuse for a duty to defend. Well, the duty to defend only, while admittedly broad, is based on the allegations in the complaint. And if the allegations in the complaint don't satisfy the policy language, there is no duty to defend, no matter how broad it is. Are you asserting that the allegations don't come within the policy language at all? No, I'm sorry. I didn't mean to convey that. I'm saying that there is a difference between whether what we're dealing with here is not a duty to defend in the sense that do the factual allegations by themselves constitute a claim for which coverage might be provided? What we are talking about is a different issue, which is a separate issue under the insuring agreement, which is whether the Bearden action was a claim first made and reported during the policy period. And so in that context, what you're looking at is… Or whether or not it's an interrelated wrongful act. Correct. And with respect to whether or not it's an interrelated wrongful act, given that the policy includes omissions and breaches of duty, do you believe that there's a way to interpret the plaintiff's complaint in a way to find that, yeah, this fifth claim does come within this idea of omission and or breach of a duty in terms of failing to enact sufficient kind of safeguards for young people? No, I do not. I mean, because what you are looking at, even for duty to defend purposes, are the factual allegations that are in the complaint, not legal theories. So even under the duty to defend, it is not enough to say that two cases allege negligence, that two cases allege a failure to adopt policies. What you have to look at is it's based on the facts that are actually alleged in the complaint. And the facts that are alleged in the complaint are specific to all three of the different violators and the different victims. But although the facts differ in terms of particulars as to where and when, certainly there is this theory that the plaintiffs have as to all three, that you had this national organization that was asleep at the wheel. They were aware that there were these instances of misconduct directed at children occurring, and they did nothing. And they could have done something because they had the power and authority to employ regulations and policies. So that seems that – that does have some salience. That does seem to relate to all three cases in a way that would be covered by the policy. Well, Your Honor, I think there is a difference between saying that in the abstract and saying it in terms of what was alleged in the complaint. And I think it is different in terms of how the facts play out as alleged in these particular cases here. Because there are instances, for example, where – like the same thing. Like you could say that a board of directors has an obligation to supervise its CEO and its other senior executives, and that they decide they don't want to do that. Does that mean then for every – and that's kind of what the Glascoff case said. So even then, right, does that mean that every time – sorry – every time the CEO does something wrong because there is no policy in place, that therefore those cases are all related, which is effectively what that position is, which is that because there was no national policy adopted, that necessarily means that no matter what happens in the sexual misconduct space, all of those cases then are related because they all involve a circumstance where somebody – where the entity at a national level has decided they don't want to adopt a policy for some reason. So does that mean then that every single time there is an instance of sexual misconduct between a trainer and a trainee, that that means those are all related because that's effectively what that means. And that gets you then to the attenuation issue that Your Honor was talking about earlier and what Bay Cities also recognizes as well. Is that there have to be some facts that actually tie things together. And at some point, there's going to be a level of abstraction that makes that impossible to do consistent with even broad policy language. And that ends up being the case here because what we are talking about are different trainers and different factual circumstances that are each being addressed in each of those different cases. That was the basic point that I wanted to make with our oral argument today. I don't want to belabor the issue. If Your Honors have other questions with respect to our position or other issues with the briefs, I'm happy to address them. All right. Thank you. Thank you, counsel. All right. We'll hear rebuttal. Thank you. Just a few points. First, it is incorrect to say that the Doe claim, the Bearden claim, and the Prior claims only allege specific wrongful acts against the single perpetrator. For example, and we cite this in our brief, it's in the record, the Doe claim expressly alleges that the trust failed to adopt policies to protect minor riders from Bearden and others. Quote, defendants breached their duty by failing to protect plaintiff from foreseeable harm and failing to enact any policies or procedures to address assault by instructors or other persons in authority, including Bearden. So these were not the overarching national level issue, which is why my client, USA Trust, got sued. It's about what they failed to do to enact policies to stop these trainers and adults from engaging in sexual abuse of minor children who were admittedly enticed into these events. And so to say, for the appellee to say, no, each case only addressed that specific trainer is not true. If you look at the series of 14 different overlapping allegations that we list in our brief with copious sites to the record for each complaint, you'll see that it's much broader than that. What I would also say is it doesn't nothing requires the perpetrator to be the same, either in the policy language or the cases. And we have the WFS case where the perpetrator, the independent auto dealers were different. But you look at the policy language and there's nothing in there that says that the that even comes close to suggesting that there has to be a similar perpetrator or the same perpetrator. It goes to wrongful acts. And the question was asked to me, what are the wrongful acts? The wrongful acts. Thank you, counsel. Your time is expired. OK, thank you. I appreciate your time. Thank you. The case just argued will be submitted.
judges: BYBEE, COLLINS, Curiel